The next case is Stephen Sewalk and SMS v. Valpak Direct Marketing Systems. Anthony Garcia is here for the appellants, Sewalk and SMS. Eric Goldberg is here for Valpak. And once you're ready at council table, Mr. Garcia, you may begin your argument. May it please the court. Good morning, your honors. My name is Anthony Garcia, and I represent Stephen Sewalk and SMS Business Entities Inc. in this appeal. I respectfully request two minutes in reserve for rebuttal. The appellants seek reversal of two trial court orders that summarily denied the appellants request to reopen the case, and to that end, my presentation today will consist of two points. The first point will be to discuss how the trial court erred in its application of Florida law. And the second point will be to discuss how the appellee's argument, procedural arguments about this appeal are incorrect. However, before moving into my first point, I would like to briefly note that the standard of review in this case should be a de novo standard of review, and this is effectively the same whether or not the court chooses to hear the arguments made by Valpak as to the abuse of discretion standard. And the reason for that is because there is copious case law that it is an abuse of discretion for a court to improperly apply the law when making its decision. So under both circumstances, the court will be reinterpreting Florida law, which is effectively a de novo standard of review. With respect to my first point of the presentation, the premise of this appeal is quite simple. The parties entered into a settlement agreement that the appellants later believed was procured by extortion, and once they made that determination, they attempted to have that settlement agreement set aside, and the trial court summarily denied that request based on an improper interpretation of Florida law. And also, reliance upon this court's ruling in United States v. Contents of Bank of America, which was an unpublished case from the 11th Circuit in 2011. Before we get there now, this is another case where we have to decide whether or not we have appellate jurisdiction, so the operative order for appeal is the motion to reopen rather  Yes, Your Honor. And the reason for that is because at the time the dismissal order was entered, it was done essentially by stipulation the parties had entered into a settlement agreement, and so it's not that order that's being appealed. It is the attempt to reopen the case after my clients attempted to set aside the settlement agreement, and it was the motion to reopen that was denied improperly. And so the correct orders that should have been appealed are the motion to reopen itself, the order denying that, as well as the subsequent order denying what I've termed the motion for reconsideration. So it was proper to appeal those two orders from the judge denying the motions to reopen. Since we're discussing procedural issues, Valpak has also made the argument, and I believe it is their strongest argument on procedural issues, that this appeal would have been untimely but for the motion to reconsider that was filed. Valpak argues that the motion to reconsider was not actually a motion to reconsider and therefore would not qualify under Rule 59E. If it does qualify as a motion under Rule 59E, then under the Federal Rule of Appellate Procedure 4A4, capital A, Roman numeral 4, the time for appeal would be recalculated. And I would point to the trial court's order on the denying the motion for reconsideration where the court itself specifically characterized the motion as a motion for reconsideration under Rule 59E of the Federal Rules of Civil Procedure. And I do think it's instructive for the court to understand the timeline of events. On July 20, 2022, that's when the court issued its order of dismissal, that's ECF Document 29. Twenty-six days later, which was within the time period permitted by the trial court to file a motion to attempt to reopen the case, that's when the appellants filed their motion. The court denied that motion, the first motion, on September 6, which is ECF Document 35. Seventeen days later, appellants filed the motion to reconsider, which the trial court spent some additional time considering that because they denied the motion on November 9, 2022, and only two days later was when this notice of appeal was filed. So at all times, the appellants were being diligent in attempting to prosecute this appeal. They were operating under the assumption that although the second motion was not stylized as a motion for reconsideration, in effect and in substance, it was a motion for consideration and the trial court agreed with that. Valpak also argued in their brief that the opening brief should have been stricken due to reliance on the Stephen Seawalk affidavit. I do believe that argument is now moot since the court has permitted that affidavit to be submitted under seal, and it was. And those, I believe, are the main procedural arguments that were raised by Valpak, so if the court has no questions on that, I will move to the first point of my presentation, which is the fact that the trial court here did not engage in any analysis of the facts of what was submitted in Mr. Seawalk's affidavit, and instead summarily dismissed the case based or denied the motion based upon an erroneous interpretation of the United States versus contents of Bank of America case. And if the court has, the court should now have had the opportunity to review the sealed affidavit of Mr. Stephen Seawalk, which was submitted to the court. Of course, that was a breach of the settlement agreement. That affidavit was a breach of the settlement agreement, which was supposed to remain confidential, right? I don't know if it was a breach of the settlement agreement, but the only way for Mr. Seawalk to challenge the veracity or the enforceability of the settlement agreement was to disclose the facts that support the extortion, so it simply would not make sense for Mr. Seawalk to not be able to discuss anything at all about the extortion if he's trying to show that there was some extortion. And the trial court did note that under the local rules, the affidavit should have been submitted with permission by the court. That was not done, and nevertheless, the court did not issue any sanctions or anything to that effect, and Mr. Seawalk did attempt to submit the sealed affidavit a subsequent time with the motion for reconsideration, asking the court's permission to submit the affidavit. With the time that you have left, why don't you respond to Val Pack's argument and its brief that Florida law is clear that there's no duress or extortion sufficient to set aside a settlement agreement as long as Val Pack had a reasonably good faith belief that Seawalk engaged in bankruptcy fraud because of his different valuations of his business and his Chapter 11 petition and filings, and they believe that he knowingly and fraudulently made false statements under oath? Yes, Your Honor. I believe that if you look at the Berger v. Berger case and additional cases beyond that, you'll find that in Florida law, it actually does not matter whether the threatenor has a good faith belief that there is a crime being committed, which my clients reject that, but if you look at the Berger case, it matters more about was the threat being made for that person's pecuniary gain, regardless of whether or not the threat was justified. For example, in the Berger v. Berger case, the facts of that case have a husband who related crimes, and the husband was justified in making those threats, but the court still found that the settlement agreement was procured under duress because whether or not the threat was justified, he was not permitted to make that claim for his pecuniary gain. Well, I think the issue is how do we reconcile a case like Berger with a case like Franklin, which seems to suggest that if the threat is justified, it can't be duress. Yes, Your Honor. I think the way that you reconcile that is if you look at the dissent in the Franklin case, the court notes that that rule was inconsistently applied in Florida, and years later, in the Bates v. Bates case, which is the most recent case that interprets Berger and applies Berger, which was cited in the brief, um, that's a case from the Florida District Court of Appeals in 2021, which was recently denied review by the Florida Supreme Court this year, meaning it's good law. In that case, the court specifically says, duress can occur where the defending spouse threatens an action, even an action that the defending spouse has a right to take, for the defending spouse's own pecuniary advantage. And I know that the trial court has tried to make a distinction about, is this a family law case or these family law principles? And I would argue that, no, these are all generally applicable contract principles that can be applied even outside the family law context. So the Bates v. Bates case suggests that even when the threat mark has a right to make a threat, that the focus for an extortion analysis is on whether the threat is made with the intent to secure a pecuniary advantage. And that is what happened here. I would argue that Valpak did not have a good faith basis. Can I ask you a quick question about that? So let's just assume, for the sake of argument, that Florida law is as Valpak says it is, and they have to have a good faith basis. Is there anything in the record that establishes that they did have a good faith basis? No, Your Honor. And the district court never held a hearing on this, right? That's exactly right. There was no hearing on this. The Valpak was not even present at the bankruptcy proceeding. They have not offered any affidavits in any responses to the motions that would show they had personal knowledge of anything that occurred. They have only provided speculation. My client does have valid explanations for why he used certain valuations for the business, and he would prolish the opportunity to present those arguments at an evidentiary hearing, and he was prepared to do so. So what do we even know? I mean, and I know that the, you know, your briefs talk about this bankruptcy proceeding and what happened in the bankruptcy proceeding. Is any of that stuff in this record? Like, what is actually, do we know about the bankruptcy proceeding in this record? There is nothing in the record about the bankruptcy proceeding in this case. I would assume that a prison counsel will argue that the court should be given notice of some documents, and we would not object to that. But even looking at those documents, the court should note that my client has explanations for those discrepancies, and he wants to be able to explain them, and it's not fair for the trial court to deny him that opportunity. And I think that the court really should not have relied upon the contents of Bank of America case because it's an incomplete analysis. The Florida case law doesn't just stop at, was there a, was the threat justified? The Florida law requires a look at the pecuniary advantage element. And with that, I reserve my time. Mr. Goldberg. May it please the court. Good morning, Eric Goldberg of DLA Piper, appearing for the appellee, Valpak Direct Marketing Systems. If I may, I'd like to respond out of order and address the colloquy that just took place a few minutes ago, where the court asked whether there was anything in the record to establish Valpak's good faith belief in the validity of the claim that bankruptcy fraud had been committed. And counsel for the appellant said no, that's simply not true. And in fact, in the appellant's opening brief, they say no less than five times that there was no evidence in the record. But the fact is that there was, there was ample evidence in response to both the motion to reopen and the motion for leave to include the Valpak, the CWOC affidavit. Valpak provided extensive briefing. We had a request for judicial notice that attached full copies of documents that Mr. CWOC had filed in his own bankruptcy case and attested to under penalty of perjury. We provided ample evidence to cite the applicable law, the Lindholm case about what bankruptcy fraud is and how Mr. CWOC's own documents, his admissions, made under penalty of perjury. Those documents alone, combined with the facts that were of record in the district court case where Mr. CWOC was seeking damages in excess of $1 million for the loss of a business that he had valued at $12,000 in his own bankruptcy scheduled, on bankruptcy schedules. So there was ample evidence on both of those motions. There was no testimony required, nothing else required. Now, certainly Mr. CWOC might have defenses or responses to that. But as to the query raised by the court about whether there was evidence in the record of bankruptcy fraud, there absolutely was. It was ample and it was submitted in detail on both motions as well as also stated in our opening brief. So let's just break that down for a minute. You've referred to briefing and some other things, but as far as evidence, what was in the record? The schedules he filed, is that right? The bankruptcy schedules signed by Mr. CWOC under penalty of perjury. Okay, and what else? That was the evidence, the documents he filed with his valuation and his bankruptcy schedules stating two essential components. One, to their claim that ValPAC had violated the automatic stay. We submitted the bankruptcy schedules to show that contrary to the appellant's contention, there was no agreement, no franchise agreement listed as an asset of the CWOCs when they filed bankruptcy. The schedule G, which is a component of the bankruptcy schedules where a debtor lists the contracts to which he is a party as of the time of bankruptcy, and both his amended and his original schedules, he said none, there are none. A little more complicated than that though, isn't it? I mean, he did include in his Chapter 11 bankruptcy petition a $12,000 interest in the franchise? Correct, he valued his interest as his 100% interest in contrast to what he says in his affidavit. In his bankruptcy schedules, he valued his interest in SMS, which included, or which was the franchisee, it may have owned other things, but he valued the entirety of his 100% interest in SMS at $12,000. And so, wasn't it his 401k was responsible for the remainder of the $100,000? I mean, he didn't ever had an opportunity to explain any of that, did he? I mean, it's not, it seems to me it's not clear that what he has in his Chapter 11 petition is incorrect. He never got an opportunity to explain why he valued his interest at $12,000 rather than $100,000, right? Well, in the district court litigation, he was claiming damages in excess of a million dollars for loss of that business. But the fact is that the story told in the affidavit, which includes the mediation confidential information, is absolutely inconsistent with what he testified to under penalty of perjury when he had to submit those bankruptcy schedules. He's never had an opportunity to explain that there may have been extenuating circumstances surrounding what he had in his Chapter 11 petition, though. No, he didn't. But to the question raised by the court of whether there was evidence in the record to establish a good faith basis on behalf of Valpak for asserting that Mr. Seawalk had committed bankruptcy fraud, there was plenty of evidence. I think it sounds like what you're saying is just, look, this is what he put on his schedules. That's not what he's saying his business is worth. That gave us the good faith basis. He may have some, like, defenses or some explanations. But look, we're not saying he's actually guilty. We're just saying we had a good faith basis. We couldn't find anybody guilty based on the allegations in our brief. But we submit that there is more than a good faith basis, not simply on those two factual issues, but also on the ample case law we provided that showed similar facts, similar to what Mr. Seawalk uncontrovertedly testified to in his bankruptcy case. And the district court could not have reached a contrary conclusion after an evidence you were hearing and hearing his explanation? I couldn't say what the district court might have done, but certainly there is more than a good faith basis for asserting these claims based on Mr. Seawalk's own admissions. With regard to his argument that's made in the Seawalk affidavit, now under seal, that the $12,000 was only for his 2.5% personal interest, not the balance that was owned by the 401k, the numbers simply don't make sense. Because, first of all, he claimed in the district court that the loss of that business gave rise to damages in excess of $1 million. Yet the entirety of all of his personal property when he was in front of the bankruptcy court, attesting under penalty of perjury about what his assets were, was only $256,000. So the business with the 401k and his personal interest could not have been a million dollars because all of his assets together were $250,000. And the 2.5% personally held versus 97.5% in the 401k also don't make sense. Elsewhere in the schedules, again, submitted to the district court, show that he valued the entirety of his 401k at $56,000. So again, if the 2.5% was worth $12,000, it doesn't make sense that if he wasn't including the 401k share, that the 401k could only be $56,000. If 2.5% was $12,000, the entirety of the business would be worth $460,000, which is more than he had in all of his personal assets. What was the threat then? The threat is we're going to report you for criminal action if you don't accept this $12,000 settlement. I can't disclose the confidential mediation communications. The appellants have. But let's take for purposes of this argument that what Mr. Seawalk said in his affidavit is true, and it is not. His allegation is that Val Pack told him that if he didn't accept the offer, which was to pay his damages in the amount that he had claimed the businesses were, $12,000, that he would be reported to the U.S. trustee. The U.S. trustee has no prosecutorial power. That can only be done by the U.S. attorney. But interestingly and significantly, the Seawalk affidavit, which... Of course, it says I'm looking at paragraph 37 of his affidavit. It's under seal. Oh, all right. Since it's under seal, I won't... Well, can I get you to address a question that Judge Pryor asked then, which is, is this what Florida law is? I mean, she cited a case that suggested that just any threats at all, maybe this is a way in sort of any threats at all, whether they're based on good faith or not, are enough to avoid an agreement like this. Any threats of prosecution or reporting to... No, I think that's too broad. I think the proper law is the Bank of America case, and it is simply... Well, that's... Is that... What case is that? Is that our unpublished case or is that... The unpublished opinion, I was about to say, we agree with the B of A decision, as do more recent courts that cite that with approval. So these are... So let me just get you to... So you got our unpublished decision, which is not precedential, and then it seems like we've got Florida intermediate appellate court decisions kind of going different ways. Is that an accurate lay of the land? They reach a different conclusion. I wouldn't say that they're going a different direction for several reasons. The subsequent cases, and here I think we're talking about the Paul Revere insurance case and the Franklin v. Wallach case, in addition to being more recent, they also are different on factual grounds in that in Berger, the marital settlement case, as compared to the B of A, Franklin v. Wallach, and the Paul Revere case, the alleged threat of prosecution in Berger was completely unrelated to the scope of the settlement agreement, whereas in the Wallach case, Paul Revere, and B of A, the conduct complained of or threatened was directly related to the subject of the matter under settlement. And the Florida cases have also made clear, as did the district court, that the distinction between a business case and a marital case is not an insignificant one. And specifically on that point, the cases have said the business litigation is different. And here now I'm quoting from the LaRonde case, which is cited in our brief. Litigation is a business decision, and it is important that litigants assess their likelihood of success and the consequences of loss. There, the court rejected an argument of duress because, quote, there's nothing improper or illegal about counsel's position following the strength of his client's position and reminding plaintiff of the legally authorized consequences to plaintiff if the defendants prevail. And that, even if we take at face value the Seawalk affidavit, is the alleged extortion. All right, let me ask you this. So they cite, just to Florida statute, an extortion that says, whoever either verbally or by written or printed communication maliciously threatens to accuse another of any crime or offense with intent thereby to extort money or any pecuniary advantage whatsoever, end quote, has committed the crime of extortion. You know, what do you say about that? Two things. First, again, it doesn't address the way the courts have interpreted that under the Paul Revere. Yeah, so here's the issue I have with just relying on these intermediate appellate court decisions. I mean, our job on a case like this when we're trying to predict state law is to predict what the Florida Supreme Court is going to do. And certainly, intermediate appellate court decisions are relevant to that. But things like a statute, you know, is also relevant. So that's, I guess, what I'm asking. Fair enough. And let's go back to that statute and, more specifically, the first word of that statute, which, as you quoted, is maliciously. And that issue is not addressed by the appellants, but is addressed by Valpact in its brief. We have to consider what does that word mean? And the Florida courts have clarified that that element of the statute, maliciously, refers to legal malice as opposed to actual malice. Actual malice being simple, you know, ill will, you know, being mean, as opposed to legal malice, which is taking an action without legal justification. So under the statute, in order to be extortion under the Florida statute, the malicious element of that is legal malice, meaning without legal justification. But as we've just discussed, there was ample legal justification for the position taken by Valpact in pointing out that the inconsistent disclosures or statements made to the district court saying the business was worth a million dollars, a state court where Mr. Seawalk sued the party that sold him the business for a million dollars, saying that the business was actually worth less, then in bankruptcy, saying the business was worth $12,000, and then months later in district court, saying that the business, now that he was no longer trying to minimize his assets to pay creditors, all of a sudden the business back was worth a million dollars. Is there a difference between a motion to rescind a settlement agreement and a motion to reopen a settlement agreement? All he asked for is to reopen so that the court can take into consideration whether or not the settlement agreement can be rescinded. Well, I think that what was asked for in the motion to reopen was not to reopen the settlement agreement, but rather to reopen the case. And the reason why it was a motion to reopen to the case was because, as you noted, I think in your first question today, is that do we have jurisdiction because the appellants are seeking reversal of two orders, the orders on denying the motion to reopen and the order denying the motion for leave to include the Seawalk affidavit. But there was no appeal taken of the dismissal order. And as we state in our brief, we think that's a fatal defect. That dismissal order says that after the mediation report was filed, that pursuant to Local Rule 3.09B, Middle District of Florida, this case is therefore dismissed without prejudice, subject to three things. The right of the parties within 60 days of this order to submit a stipulated final order of judgment. That was never done. To request an extension of time. That was never done. Or for any party to move to reopen the action. That is the motion that they filed. But the fact is they could court, in this court, can provide no relief because the case already had been dismissed and no appeal. He filed a motion to reopen and the judge treated it as a motion for reconsideration. And we said that a motion for reconsideration is treated as a tolling motion under 59E. Under circumstances where it's collateral to the merits. That's correct. There was no appeal taken of the dismissal, which became final before that. All right. Can I ask you to respond to one more? I'm sorry. Go ahead. One more issue. So I looked at the restatement of contracts. And so the restatement of contracts in Section 176 says an explain... A threat of criminal prosecution is improper as a means of inducing the recipient to make a contract. If the threat is made, the fact that the one who makes it honestly believes that the recipient is guilty is not material. So that's... I guess the point of that is the restatement of contracts takes the hard rule that a threat of prosecution in and of itself, even if there's good faith, voids a contract. And I think some states do take that position and that hard rule. And I guess that's my point. So your position is that there's enough in Florida law for us to say that Florida is a minority rule and doesn't take that position. That's pretty much what you're saying. Given that that's your... And I don't think there's any Florida Supreme Court case that said that. Am I right about that? Is this something that we should certify to the Florida Supreme Court? And I'll just tell you, I feel odd saying as a matter of Florida law that the Florida Supreme Court is going to take a position at odds with the restatement of contracts without the Florida Supreme Court having said anything. What do you think about certifying this to the Florida Supreme Court? I couldn't predict one way or another what position the Supreme Court would take as to going against the restatement of contracts. And honestly, having not delved into that provision of the restatement, I really... Well, what about certifying the question, I guess? The question, this question overall about whether making a threat to induce a contract is always what awards the contract or whether there's a good faith element to it. Should we certify that to the Florida Supreme Court to ask? I think it would be helpful but unnecessary here because there's simply no admissible evidence that any such threat ever took place. The Seawolf Affidavit is replete with... There's falsehoods in there in terms of the valuation of the interest in SMS. There are falsehoods in that affidavit about whether the debtors, that's Mr. Seawolf and his wife, disclosed or stated the existence of the franchise agreement in the Seawolf Affidavit. He says he did. The schedules that we filed, which are his schedules with his signature under penalty perjury are very clear that he did not. And all the allegations in the Seawolf Affidavit about what took place in the mediation were not simply a breach of the Florida Mediation Statute clause of the Supreme Court rules, the judge's order on mediation, the settlement agreements and the mediation agreement. But even if you take away the confidentiality cloak, the essential element of the Seawolf Affidavit where he talks about what he claims happened is hearsay and double hearsay. He never says Valpak said this. He says, the mediator told me and Mr. Garcia that Valpak or its counsel told her. So it's double hearsay and the entire thing, frankly, we don't think should be considered at all. And we believe that the district court was correct. You asked the question, or Mr. Garcia, the question was asked, or Mr. Garcia said that the district court didn't issue any sanction for breach of the mediation privilege. That's simply not true. The sanction issued by the district court for breach of the mediation privilege was to strike both that motion and the affidavit of Mr. Seawolf when it was filed in the district court. All right, we have your argument. Thank you, Mr. Goldberg. Thank you. Mr. Garcia, you've reserved some time for rebuttal. Thank you, Your Honor. I would like to respond to a few statements made by my colleague. First, I have stated that there are no facts that would support a good faith belief that there was a bankruptcy fraud or any other crime, specifically because there is no evidence of intent that ValPAC has provided at any level. All we have seen is statements of discrepancies for which my client has reasonable explanations. And you cannot base a reasonable belief that there has been fraud or crime. Well, criminals very rarely write like an email saying I intend to commit a criminal act. I mean, you have to infer intent from action. And so if, I mean, opposing counsel is correct that they have a misstatement under penalty of perjury. I mean, isn't that enough for them to say, look, we think you committed a crime? I mean, they're not, they're not prosecuting you. I mean, they're just saying that we have enough to report you. I don't believe so, only because there was a, in that bankruptcy, there was a subchapter five trustee that was involved. There was also the U.S. trustee's office. If they had believed that there was a crime or fraud, they would have been the ones to make some sort of report for that. So if the U.S. trustee's office did not refer anything, then I don't think that there would be sufficient grounds for that. Additionally, there was a statement about the contract itself not being listed in schedules. It actually was listed in the schedules, just in the wrong place. And we were going to amend it, but the bankruptcy case got dismissed before that. Say that again. There was a listing of the franchise agreement that was at issue, but it was listed in the wrong spot on the schedules. It was listed. It was not omitted. It was just not. What about the money in the 401k? The money in the 401k, I do believe that was listed, but there was, the 2.5% issue was not fully articulated in the schedules. And that was something that didn't get, I see my time has expired. So, like I was talking about with opposing counsel, I mean, the underlying legal issue here is one that the Florida Supreme Court has not addressed, which is, you know, the issue about whether threatening someone with a crime to get a contract voids the contract. Is your appeal, should we certify this question to the Florida Supreme Court so you can argue it there? Honestly, I think it's clear enough with the cases following Berger, but I wouldn't mind adding further clarity on the issue because the Wallach dissent didn't note that Florida does seem to apply this inconsistency, inconsistently. So I would not be opposed to that. Okay. All right. Thank you. The court is in recess until nine o'clock tomorrow morning. All rise.